UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

FOSTER PARENTS ASSOCIATION OF WASHINGTON STATE,

Plaintiff,

v.

KEVIN QUIGLEY, et al.,

Defendants.

CASE NO. C11-5051 BHS

ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGEMENT

This matter comes before the Court on Defendants Kevin Quigley and Jennifer Strus's ("Defendants") motion for partial summary judgment (Dkt. 180) and Plaintiff Foster Parents Association of Washington State's ("FPAWS") motion for summary judgment (Dkt. 186). The Court has considered the pleadings filed in support of and in opposition to the motions and the remainder of the file and hereby grants Defendants' motion and denies FPAWS's motion for the reasons stated herein.

**I. PROCEDURAL HISTORY**

On January 18, 2011, FPAWS filed a complaint against Defendants for declaratory and injunctive relief under 42 U.S.C. § 1983 for violations of the Child Welfare Act, 42 U.S.C. §§ 670–679b ("CWA"). Dkt. 1 ("Comp.").

ORDER - 1

On May 1, 2014, Defendants filed a motion for partial summary judgment (Dkt. 180) and Plaintiffs filed a motion for summary judgment (Dkt. 186). On May 19, 2014, both parties responded. Dkts. 192 & 197. On May 30, 2014, both parties replied. Dkts. 201 & 203.

## II. FACTUAL BACKGROUND

From a global viewpoint, the facts are relatively simple. The CWA requires that any state that opts in for federal funding must comply with certain provisions of the CWA. Washington has opted in and, therefore, must comply with the CWA. FPAWS alleges that Washington fails to comply for various reasons, one of which is the failure to pay for certain items that are specifically enumerated in the CWA.

## III. DISCUSSION

Defendants move for summary judgment on the issue of whether the CWA requires the state to employ a methodology or metric to justify the amount of the foster care maintenance rates. Dkt. 180 at 1. FPAWS moves for summary judgment on the issue of whether the state violates the CWA. Dkt. 186 at 5–6.

**A.    Summary Judgment Standard**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317,

323 (1986).  There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt").  *See also* Fed. R. Civ. P. 56(e).  Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

   The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases.  *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630.  The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party.  The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim.  *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255).  Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed.  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

**B.  Methodology**

Defendants move for summary judgment on an element of FPAWS's claim "for the purpose of narrowing the issues at trial." Dkt. 180 at 1. Specifically, Defendants request that the Court

> issue a ruling as a matter of law that 42 U.S.C. §§ 672(a)(1) and 675(4)(A) do not require the Defendants to have a methodology or metric by which to systemically estimate and measure [CWA] costs to justify its rates, or its foster care maintenance payments.

Dkt. 201 at 11–12. The first referenced statutory provision provides, in relevant part, that "[e]ach State with a plan approved under this part shall make foster care maintenance payments on behalf of each child who has been removed from the home of a relative . . . ." 42 U.S.C. § 672(a)(1). The second referenced statutory provision provides as follows:

> The term "foster care maintenance payments" means payments to cover the cost of (and the cost of providing) food, clothing, shelter, daily supervision, school supplies, a child's personal incidentals, liability insurance with respect to a child, reasonable travel to the child's home for visitation, and reasonable travel for the child to remain in the school in which the child is enrolled at the time of placement. In the case of institutional care, such term shall include the reasonable costs of administration and operation of such institution as are necessarily required to provide the items described in the preceding sentence.

42 U.S.C. § 675(4)(A).

In *California Alliance of Child and Family Services v. Allenby*, 589 F.3d 1017 (9th Cir. 2009), the Ninth Circuit addressed a state's obligations under these statutory provisions. In the absence of a specific definition of the phrase "cover the cost of," the court concluded that the

ORDER - 4

question then becomes one of measuring the cost of those covered items.
While the CWA identifies the types of items that must be covered, it does
not prescribe any particular metric to measure the cost of those items. Each
state develops its own plan.

*Allenby*, 589 F.3d at 1021. Moreover, "the CWA does not set rates or tell states how they are supposed to cover costs. It does not require states to apply an index . . ., or to adopt any particular system for arriving at the amount to be reimbursed." *Id*. at 1022. Therefore, the Court concludes this language is fairly clear that the CWA does not require any particular methodology for calculating the costs to cover the enumerated items. FPAWS, however, argues otherwise.

FPAWS contends that "the *Allenby* court implicitly determined that some cost assessment is required by the CWA." Dkt. 197 at 14. Although it would make sense that a state would implement a consistent and explicit plan to meet its federal obligations, the Court disagrees with FPAWS that *Allenby* implicitly held that some plan was required. For example, if a state chooses an arbitrary amount to cover the costs of the enumerated items, then it would comply with its federal obligations if the amount actually covered those costs. In such a case, the federal agency charged with oversight or, in this circuit, a private party could challenge the state's payments. Such a scenario is unlikely, but the Court is unaware of any binding precedent or regulation to the contrary, and the Court declines to write such a requirement into the CWA. While the fact that the Department of Social and Health Services does not have an identified methodology for setting rates may cast doubt on whether it ultimately can establish compliance with the CWA, it does not itself constitute a violation of that law. Therefore, the Court grants Defendants'

1 motion that failure to have an explicit methodology to determine the costs of the

2 enumerated items is, in and of itself, a violation of the CWA.

3 **C.     Actual Compliance**

4     FPAWS moves for summary judgment on the issue of whether Defendants violate

5 the CWA.  Specifically, FPAWS argues that Defendants violate the CWA by

> (1) failing to cover the costs of and the costs of providing food, clothing, shelter, personal incidentals, and school supplies for eligible foster children, (2) failing to review the appropriateness of the amounts of its maintenance payments, and (3) failing to set maintenance payments using a methodology that considers the mandatory statutory cost factors.

9 Dkt. 186 at 25.  With respect to the third assertion, the Court denies FPAWS's motion

10 because such a failure is not an independent violation of the CWA.  The Court will

11 address the other two arguments.

12     **1.     Costs**

13     It is undisputed that the state must cover the cost of certain enumerated items.  The

14 parties, however, dispute whether the state complies with the CWA by actually, or

15 substantially, covering the costs of these items.  FPAWS contends that (1) the state

16 admits that its payments do not cover the costs of these items and (2) analysis of the

17 actual numbers shows that the state fails to cover these costs.  Dkt. 186 at 16–18.  With

18 regard to the alleged admissions, FPAWS has provided some persuasive evidence that the

19 state fails to adequately compensate foster parents in Washington.  Dkt. 186 at 11–15.

20 Defendants, however, contend that none of the documents cited by FPAWS accounts for

21 the state's obligation under the CWA.  In other words, although the State may fail to pay

22 for the overall care of a child, it has never admitted that it has failed to comply with the

CWA by failing to pay for the specific enumerated items in the CWA. Defendants are correct. While various reports show the state's substantial failure to pay for the costs of foster children, no document specifically addresses the enumerated items in the CWA. FPAWS has failed to show that admissions in the overall sense are admissions in the specific sense. For example, $500 may not cover all of the costs of raising a foster child, but it may cover the costs of the enumerated items in the CWA. Therefore, the Court denies FPAWS's motion on the issue of the state's alleged admissions.

With regard to whether the state's payments actually cover the costs of the relevant items, there is a battle of the experts that requires a bench trial and findings of fact. While FPAWS strenuously argues that Defendants' expert reports are irrelevant and should be disregarded, the Court is unable to reach that conclusion at this time. Therefore, the Court denies FPAWS's motion on this issue because material questions of fact exist for trial.

**2.    Review**

With regard to the issue of review, the CWA requires that, "[i]n order for a State to be eligible for payments . . . , it shall have a plan . . ." that meet certain enumerated requirements. 42 U.S.C. § 671. One of those requirements is that the plan

> provides for periodic review of the standards referred to in the preceding paragraph and amounts paid as foster care maintenance payments and adoption assistance to assure their continuing appropriateness . . . .

*Id*. § 671(a)(11). The regulations implementing the CWA further require that the state "must review at reasonable, specific, time-limited periods to be established by the [state

agency]: (1) The amount of the payments made for foster care maintenance and adoption assistance to assure their continued appropriateness . . . ." 45 C.F.R. § 1356.21(m)(1).

In this case, FPAWS argues that Defendants have violated this statutory provision and implementing regulation. Defendants counter that neither of these federal laws create a private right of action. The Court agrees with Defendants. The only case cited to the Court that has held that § 671(a)(11) created a private right of action failed to independently analyze the text of this provision and essentially clumped the provision with the other payment provisions. *See Sam M. ex rel. Elliott v. Chafee*, 800 F. Supp. 2d 363, 383–388 (D.R.I. 2011). Therefore, the Court concludes that this otherwise persuasive authority is distinguishable.

With regard to binding authority, the cases that have held that a provision of the CWA created an enforceable right have focused on statutory language providing a benefit to "each child." *See, e.g., Henry A. v. Willden*, 678 F.3d 991, 1007 (9th Cir. 2012) ("As in those cases, the reference here to a case plan 'for each child' focuses squarely on the protected individual, rather than an aggregate interest or a regulated entity."). In this case, § 671(a)(11) does not contain language focusing on each child, and, instead, provides for an aggregate interest of maintenance payments and periodic review by a regulated entity of the state. Such statutory language does not create an enforceable private right of action. Therefore, the Court denies FPAWS's motion on this issue

1 | because FPAWS has failed to show that § 671(a)(11) passes the first prong of the
2 | *Blessing*[1] test.

### IV. ORDER

Therefore, it is hereby **ORDERED** that Defendants' motion for partial summary judgment (Dkt. 180) is **GRANTED** and FPAWS's motion for summary judgment (Dkt. 186) is **DENIED**.

Dated this 14th day of July, 2014.

BENJAMIN H. SETTLE
United States District Judge

---

[1] *Blessing v. Freestone*, 520 U.S. 329, 340 (1997)